**STATE of Indiana, Appellant,**

v.

**Jesse A. McCORMICK, Appellee.**

No. 879S210.

Supreme Court of Indiana.

Dec. 10, 1979.

Jeffery L. Lantz, Pros. Atty., Scott R. Bowers, Chief Deputy Pros. Atty., First Judicial Circuit, Evansville, Theodore L. Sendak, Atty. Gen., Phillip R. Blowers, Deputy Atty. Gen., Indianapolis, for appellant.

John G. Bunner, Barry L. Standley, Evansville, for appellee.

PIVARNIK, Justice.

This case originated in a two-count information filed in Vanderburgh Circuit Court. Defendant obtained a change of venue to the Vigo Superior Court, and a change of judge. Defendant then filed a motion to dismiss Count II of the information. The motion was granted, and this interlocutory appeal follows. Pursuant to Ind.R.App.P. 4(B), the appeal was taken first to the Court of Appeals. Under Ind.R.App.P. 4(A)(8) and 15(M), the cause was then transferred to this Court.

The prosecution seeks the death penalty in this case under Ind. Code § 35–50–2–9 (Burns 1979 Repl.). This statute establishes the procedure to be used in determining whether to impose the death penalty. The State must allege and prove beyond a reasonable doubt the existence of at least one of the "aggravating circumstances" listed in the statute. The statute further provides that this allegation is to be listed on a page separate from the rest of the charging instrument. If a guilty verdict has been obtained on the principal charge, proof of the alleged aggravating circumstance occurs at a sentencing hearing. This hearing is bifurcated from the trial of the principal charge. If the principal charge has been tried to a jury, the sentencing hearing is conducted before the same jury.

The statutory aggravating circumstances are as follows:

(1) The defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery.

(2) The defendant committed the murder by the unlawful detonation of an explosive with intent to injure person or damage property.

(3) The defendant committed the murder by lying in wait.

(4) The defendant who committed the murder was hired to kill.

(5) The defendant committed the murder by hiring another person to kill.

(6) The victim of the murder was a corrections employee, fireman, judge, or law enforcement officer, and either (i) the victim was acting in the course of duty or (ii) the murder was motivated by an act the victim performed while acting in the course of duty.

(7) The defendant has been convicted of another murder.

(8) The defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder.

(9) The defendant was under a sentence of life imprisonment at the time of the murder.

Ind. Code § 35–50–2–9(b) (Burns 1979 Repl.). The statute also provides for the introduction of evidence of the following mitigating circumstances:

(1) The defendant has no significant history of prior criminal conduct.

(2) The defendant was under the influence of extreme mental or emotional disturbance when he committed the murder.

(3) The victim was a participant in, or consented to, the defendant's conduct.

(4) The defendant was an accomplice in a murder committed by another person, and the defendant's participation was relatively minor.

(5) The defendant acted under the substantial domination of another person.

(6) The defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired as a result of mental disease or defect or of intoxication.

(7) Any other circumstances appropriate for consideration.

§ 35–50–2–9(c). In addition, a plurality of the United States Supreme Court has held that the sentencer must be allowed to consider, as a mitigating factor, "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, (1978) 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990 (opinion of Burger, C. J.) (footnotes omitted).

The facts pertinent to the disposition of this appeal are as follows. On January 16, 1979, the Vanderburgh County prosecutor filed a two-count information against Jesse A. McCormick. Count I alleges under Ind. Code § 35–42–1–1 (Burns 1979 Repl.) that McCormick strangled Douglas Overby on October 5, 1978, causing him to die on January 5, 1979. Pursuant to § 35–50–2–9, *supra,* Count II sets forth an allegation which allegedly constitutes one of the statutory aggravating circumstances. This count alleges that McCormick murdered one Harold Lewis on May 17, 1977. As stated in the information, the prosecution alleges that "the murder of said Harold Lewis [is] an aggravating circumstance of the crime of murder as charged in Count I. . . ." This count is brought under subsection (b)(8) of the death penalty statute, *supra,* which provides that the State may prove, as an aggravating circumstance, that "the defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder."

In a separate cause, defendant McCormick also stands charged in the Vanderburgh Circuit Court, by an indictment returned October 24, 1978, with the murder of Harold Lewis. McCormick has not been tried on this charge, although the charge is still pending. The State and the defendant have stipulated that these two killings are not related or connected in any way. They have further stipulated:

"The evidence of the alleged homicide of Harold Lewis or evidence of Jesse McCormick's conviction if in fact he should be convicted of said homicide would not be admissible in the State's case in chief in the trial relating to the homicide of Doublass Overby for any purpose including proof of knowledge, intent, motive, common scheme, identity, design, plan, res gestae, or mistake.

The evidence of the alleged homicide of Douglass Overby or evidence of Jesse McCormick's conviction if in fact he should be convicted of said homicide would not be admissible in the State's

case in chief in the trial relating to the homicide of Harold Lewis for any purpose including proof of knowledge, intent, motive, common scheme, identity, design, plan, res gestae, or mistake."

Record at 45.

Defendant McCormick filed a motion to dismiss Count II, claiming that Ind. Code § 35–50–2–9(b)(8) is unconstitutional on its face and as applied to his case. While defendant's motion raised several alternative alleged grounds for finding the statute unconstitutional, the trial court disposed of the motion on only one ground. Accordingly, this one issue is the only question before this Court. The trial court held that subsection (b)(8), as applied to this case, denies the defendant due process of law.

The State, as appellant, contends the trial court erred in this ruling. It is urged that the United States Supreme Court has approved of procedures which allow the sentencer to consider other crimes the defendant allegedly committed and for which there have been no convictions in determining whether or not to impose the death penalty. *Williams v. New York*, (1949) 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. However, *Williams v. New York* has been severely limited, if not overruled, by subsequent United States Supreme Court cases concerning the death penalty.

In *Gardner v. Florida*, (1977) 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393, the Court held that, as a matter of due process, a defendant must have an opportunity to deny or explain all the information which may be considered by the sentencer in determining whether to impose the death penalty. In reaching this conclusion, the Court distinguished *Williams v. New York, supra,* in the following manner:

"[W]hen the *Williams* case was decided, no significant constitutional difference between the death penalty and lesser punishments for crime had been expressly recognized by this Court. At that time the Court assumed that after a defendant was convicted of a capital offense, like any other offense, a trial judge had complete discretion to impose any sentence within the limits prescribed by the legislature.

.    .    .    .    .

In the intervening years there have been two constitutional developments which require us to scrutinize a State's capital-sentencing procedures more closely than was necessary in 1949.

First, five members of the Court have now expressly recognized that death is a different kind of punishment from any other which may be imposed   .    .    ..

.    .    .    .    .

It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion.

Second, it is now clear that the sentencing process   .    .    . must satisfy the requirements of the Due Process Clause. .    .    ."

430 U.S. at 357–58, 97 S.Ct. at 1204, 51 L.Ed.2d at 401–02 (footnotes omitted). Thus, we do not find *Williams v. New York* to be determinative of the present issue.

A consideration of our statute and recent United States Supreme Court pronouncements on the question of sentencing in a death penalty situation convinces us that the sentencing hearing in the present case would amount to nothing short of a full trial on the aggravating circumstance issue. First, the State must prove the existence of the aggravating circumstance beyond a reasonable doubt. Ind. Code § 35–50–2–9(a). The defendant may offer, as mitigating circumstances, evidence of "[a]ny other circumstances appropriate for consideration." § 35–50–2–9(c)(7). *See also Lockett v. Ohio, supra.* The statute further states that the defendant may present any additional evidence relevant to the aggravating circumstances alleged or any of the statutory mitigating circumstances. § 35–50–2–9(d). In addition to these statutory requirements, the United States Supreme Court has established other general principles which govern the sentencing hearing in a case where the imposition of the death penalty is sought.

It is clear that due process considerations play an important role in the sentencing aspect of a criminal trial. *Presnell v. Georgia,* (1978) 439 U.S. 14, 16, 99 S.Ct. 235, 236–37, 58 L.Ed.2d 207, 211 (*per curiam* ); *Gardner v. Florida,* (1977) 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393. The Supreme Court held in *Gardner* that, as a matter of due process, the defendant must be given an opportunity to deny or explain any information which may be used by the sentencer in deciding whether to impose the death penalty. This is obviously a more stringent procedural standard than is required in a non-capital sentencing situation. This closer scrutiny found in capital cases is demanded by the Eighth Amendment's ban of cruel and unusual punishments and the Due Process Clause of the Fourteenth Amendment. *Gardner v. Florida, supra; Woodson v. North Carolina,* (1976) 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944.

In the present case, the State alleges that defendant McCormick committed another murder. Under our statute, the State would have to prove beyond a reasonable doubt that McCormick committed the Lewis murder. The State could meet this burden only by presenting a complete prima facie case. This will involve the same witnesses, evidence and testimony as would appear in a normal criminal trial. Further, under § 35–50–2–9(c) and (d), and *Gardner v. Florida, supra,* defendant McCormick would be able to present contrary evidence of his own regarding the Lewis killing, and would be entitled to "deny or explain" any evidence which the State introduced. Thus, it seems clear that, when the State alleges, as the aggravating circumstance under § 35–50–2–9(b)(8), that the defendant committed another murder, nothing short of a full trial must result.

We hold that Ind. Code § 35–50–2–9(b)(8) is unconstitutional as applied to this defendant. The procedure to be utilized in this case as provided for by statute and case law will be, in fact, two trials. The defendant will first be tried to a jury for the killing of Douglass Overby. If he is convicted, a sentencing hearing will take place. At this sentencing hearing, the defendant will, in essence, be tried for the murder of Harold Lewis. This hearing will be before the same jury which will have just recently convicted the defendant of another, unrelated murder. The trial court noted that if McCormick were tried in an actual criminal trial for the murder of Harold Lewis, any evidence relating to the Overby killing would be inadmissible in the State's case in chief. Likewise, no evidence of the Lewis killing may be admitted in this case in the trial of Count I, the Overby killing. Thus, the effect of the statutory procedure in the present case is obvious: defendant McCormick would be fully tried on two separate, unrelated charges before the same jury. He would be tried on the second count to a jury which has been undeniably prejudiced by having convicted him of an unrelated murder. As the trial court pointed out in its ruling:

"Subsection (b)(8) allows the State to secure a conviction on a strong murder case, then seek the death penalty by proving a weak case before a jury which is undeniably prejudiced. This opens the door to death penalty recommendations upon a level of proof lower than proof beyond a reasonable doubt."

Record at 48.

We view this situation as being qualitatively different from a case where the State alleges some other aggravating circumstance found in the statute. Subparts (1) through (6) of subsection (b), quoted *supra,* relate directly to the crime constituting the principal charge. Very likely, the evidence which proves any of these six aggravating circumstances will have come before the jury as part of the State's case in chief in the trial of the principal charge. The prejudicial impact resulting from the introduction of this evidence at the subsequent sentencing hearing is virtually non-existent.

Similarly, evidence introduced to prove subparts (7) and (9) also does not carry with it the emotional and prejudicial impact which would cause the death penalty to be imposed capriciously. *Gregg v. Georgia,* (1976) 428 U.S. 153, 96 S.Ct. 2909, 49

L.Ed.2d 859. Subparts (7) and (9) concern whether "[t]he defendant has been convicted of another murder" and whether "[t]he defendant was under a sentence of life imprisonment at the time of the murder." Evidence of these aggravating circumstances will almost always be in the form of court or prison records. Unlike a complete presentation of evidence regarding an unrelated murder, this evidence, in the context of this sentencing procedure, would not be of an inflammatory and improperly prejudicial nature. *See Spencer v. Texas,* (1967) 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606.

Additional constitutional protections underlying the proof of subparts (b)(7) and (b)(9) further illustrate the dangers inherent in alleging and offering evidence of an aggravating circumstance under subpart (b)(8). A criminal *conviction* is the substance of the proof of subpart (7), and is necessarily implied in the proof of subpart (9). We may assume that a conviction was obtained in a constitutionally proper manner. Proof of a conviction therefore carries with it the assurance that the facts underlying that conviction have already been fully established to an untainted, unbiased jury in a forum in which the full protections of the Constitution were afforded to the defendant. Thus, we do not foresee a risk that evidence of a prior *conviction* or of a life sentence will cause the death penalty to be recommended and imposed in an arbitrary and capricious manner. By contrast, if the State alleges the defendant *committed* another murder, under subpart (b)(8), the actual evidence of the crime will be presented for the first time to the sentencing jury. The facts regarding this alleged aggravating crime will never have been presented to an impartial, untainted jury, and the risk that the previously tainted jury will react in an arbitrary manner is infinitely greater.

Therefore, because of the prejudice inherent in the sentencing procedure where the State alleges that the defendant committed another murder, "regardless of whether he has been convicted of that other murder," and that other murder is not related to the principal charge, we hold that § 35–50–2–

9(b)(8) denies due process as applied to this defendant. U.S.Const. Amend. XIV. The State and defendant have stipulated that the alleged murders in this case are not related. Thus, our holding is confined to those cases in which the murder alleged as an aggravating circumstance is not related to the principal murder charge.

The judgment of the trial court dismissing Count II of the information is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

GIVAN, C. J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

While I remain convinced in my own mind that the death penalty is contrary to the requirement of Art. 1, § 18 of the Indiana Constitution that the criminal code be based upon principles of reformation and not vindictive justice, a position heretofore expressly rejected by a majority of this Court in *Adams v. State,* (1971) 259 Ind. 64, 271 N.E.2d 425, and that it is contrary to the mandate of the Eighth Amendment that cruel and unusual punishments not be inflicted, a position expressly rejected by a majority of the United States Supreme Court in *Gregg v. Georgia,* (1975) 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859, I cannot agree that the process of arriving at a sentence of death involving proof of the aggravating circumstance of having previously committed an act of murder under Ind. Code § 35–50–2–9, is contrary to due process of law. The jury's determination beyond a reasonable doubt of the existence of one or more of the nine aggravating circumstances is only the first step in a multi-step process. If the jury makes this first determination of an aggravating circumstance in the affirmative, it then has clearance to weigh it against mitigating circumstances and to thereafter *recommend* the extreme penalty. The statute goes on to provide that:

"The court shall make the final determination of the sentence, after considering the jury's recommendation, and the sentence shall be based on the same standards that the jury was required to consider. The court is not bound by the jury's recommendation."

As I read this provision the trial judge can only sentence to death if he too is convinced beyond a reasonable doubt that the aggravating circumstance has been shown. And finally thereafter determinations by both the jury and the judge are subject to automatic review by this Court.

I cannot fathom how this process fails to satisfy sentencing due process even where the aggravating circumstance is a prior act of murder not reduced to a conviction. If there is a taint or prejudice against the defendant in the jury at the time of the sentencing hearing because of its knowledge of the facts of the charged crime of which it has just convicted the defendant, the level thereof is consistent with due process for several reasons.

First, the taint or prejudice against the defendant at the sentencing hearing flowing from the immediately preceding trial partakes of the same nature as that flowing from the introduction of a prior conviction of an accused for murder at a regular trial. Such collateral taint does not offend due process. *Spencer v. Texas,* (1967) 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. Second, the determination of the existence of the aggravating circumstance is required to be weighed against mitigating factors. Third, the determination of the jury that the death penalty should be meted out is only advisory to the judge and does not dictate the death sentence. Fourth, the trial judge who has conducted the sentencing hearing, and previously the trial, must determine in an independent judicial act that the aggravating act of murder occurred to a moral certainty beyond a reasonable doubt before the sentence of death may be ordered. This operates as a check upon the jury determination. And fifth, the determinations of both the jury and the judge are subject to immediate and automatic review by this Court. There is no reason to conclude that under this multi-step process there will be a substantial risk that the death penalty will be inflicted in an arbitrary and capricious manner where the aggravating circumstance is an act of murder. *Gregg v. Georgia, supra.* The conduct of a trial upon the alleged act of murder at the sentencing hearing would not render the decisional processes of the jury and judge without limit or direction, *Id.,* 428 U.S. at 189, 96 S.Ct. at 2932, and would not vitiate the mandatory requirement that the defendant have an opportunity to present mitigating circumstances.

The trial court should be reversed and Count II should be ordered reinstated.